```
                IN THE UNITED STATES DISTRICT COURT
              FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,              )
ex rel. MARC A. LANDSBERG, M.D.        )
and SHARON L. BURKE,                   )
                                       )
              Plaintiff,               )
                                       )
       v.                              )   Civil Action No. 03-1263
                                       )
ARGENTIS MEDICAL, P.C.,                )   Judge Cercone
d/b/a THE WOMEN'S HEALTH CENTER,       )   Magistrate Judge Hay
LASER VEIN CENTERS L.L.C.,             )
3 DIMENSION IMAGING, INC.,             )
SERHAT ERZURUM, M.D.,                  )
GEORGE H. DENEHY,                      )
WAYNE KAWALEK, M.D., and DOES I        )
through XX, inclusive,                 )
```

                    REPORT AND RECOMMENDATION

I.   RECOMMENDATION

       It is respectfully submitted that the Motion to Dismiss or, in the alternative, Motion to Stay (doc. 30), filed on behalf of defendant Wayne Kawalek, M.D., be denied.

II.  REPORT

       Marc A. Landsberg, M.D., and Sharon L. Burke, hereinafter collectively referred to as the "Relators," commenced this *qui tam* action pursuant to the federal False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3732, as amended.[1]  The Relators

---

[1]  According to the complaint, Serhat Erzurum, M.D., hired Dr. Landsberg in October of 2001, to work as a physician in the specialty of obstetrics/gynecology at Dr. Erzurum's medical office in New Castle, PA.  Complaint, ¶ 14.  Dr. Landsberg's employment with Dr. Erzurum and his professional corporations lasted through July 28, 2003.  Id.  Dr. Erzurum hired Ms. Burke in April of 2001 to seek pre-authorization from various insurance companies on behalf of patients.  She also operated a billing company, which was engaged by Dr.

allege that the defendants perpetrated a scheme to defraud the United States of America, billing Medicare and Medicaid for unnecessary medical tests and procedures.[2]  Specifically, the Relators claim that Dr. Kawalek was the Medical Director of Defendant Laser Vein Centers, LLC (the "Centers") and as such, was hired to oversee operations for numerous locations for the Centers.[3]  Further, it is alleged that the Centers solicited patients for laser vein surgery, falsely assuring patients that the procedures would be covered by their health insurance, notwithstanding that the procedures were "cosmetic" and, therefore, not covered by Medicare and other health insurers.[4] It is alleged that employees of the Centers routinely treated areas greater than necessary in order to maximize reimbursements and routinely scheduled patients for multiple repeat visits for laser treatments in excess of what was medically necessary.[5]  It is further alleged that employees of the Centers were given cash bonuses based on the volume of procedures performed to give them

---

      Erzurum to perform collections services.  Eventually she worked with or for all of the defendants in various capacities, including billing clerk, laser technician, payroll clerk, and financial advisor.  Complaint, ¶ 13.

[2]    Complaint, p.1.

[3]    Complaint, ¶¶ 11 & 43.

[4]    Complaint, ¶ 38.

[5]    Complaint, ¶¶ 40 & 41.

a financial incentive to over-utilize laser procedures and that the Centers altered and misrepresented medical diagnoses to justify laser treatments.[6]  Additionally, the Relators claim that from at least April of 2001, the defendants submitted false and fraudulent claims and certified that the services claimed were medically indicated and necessary and performed by the certifying physician or an employee under the physician's personal supervision.[7]

Doctor Kawalek has moved to dismiss the complaint arguing that (1) it is devoid of specific allegations of fraud as required by Rule 9(b) of the Federal Rules of Civil Procedure, and (2) that the complaint fails to state a claim upon which relief can be granted.  In support of his motion, Dr. Kawalek incorporates by reference a brief filed by Dr. Erzurum in support of his motion to dismiss the Relators' Complaint to Determine Dischargeability of Debt filed in the United States Bankruptcy Court for the Western District of Pennsylvania.  Doc. 30-4, Ex. C.[8]  Alternatively, Dr. Kawalek moves the court to stay this case

---

[6]   Complaint, ¶¶ 39 & 41.

[7]   Complaint, ¶ 54.

[8]   Fed.R.Civ.P. 10(c) provides in pertinent part that "[s]tatements in a pleading may be adopted by reference in a different part of the same pleading or in another pleading or in any motion."  Assuming without deciding the propriety of incorporating by reference into the instant brief unspecified statements in a brief in a case to which Dr. Kawalek is not a party and which is pending in a different court, we note that Dr. Erzurum's brief contains certain

pending a determination by the United States Bankruptcy Court on Dr. Erzurum's motion to dismiss.

*Rule 12(b)(6) Motion*

Pursuant to Fed.R.Civ.Proc. 12(b)(6), a motion to dismiss may be granted by the court if it is satisfied "that no relief could be granted under any set of facts that could be proved consistent with the allegation."  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41 (1957).  The issue is not whether the plaintiff will prevail at the end but only whether he should be entitled to offer evidence to support his claim.  Neitzke v. Williams, 490 U.S. 319 (1989); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  The complaint must be read in the light most favorable to the plaintiff and all well-pleaded, material allegations in the complaint must be taken as true.  Estelle v. Gamble, 429 U.S. 97 (1976).  It is the defendant's burden to show that no claim has been stated.  Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991), cert. denied, 501 U.S. 1222 (1991).

The Rule 12(b)(6) argument made by Dr. Erzurum and incorporated by Dr. Kawalek on the legal merit of the allegations

---

arguments that clearly are not applicable to Dr. Kawalek, i.e., that Dr. Erzurum's alleged debt to the government is dischargeable and that because the Relators allegedly have a vendetta against him they have filed a frivolous and harassing lawsuit in violation of Fed.R.Civ.P. 11. Accordingly, we do not consider these arguments.

in the complaint consists of a denial of the allegations and a challenge to the nature, quality and quantity of the Relators' evidence, which has yet to be proffered in support of their claim.  The argument also includes Dr. Erzurum's claim as to the proper interpretation and application of Medicare laws and regulations.

In addition to the argument made in Dr. Erzurum's brief, Dr. Kawalek complains that his name makes a "cameo appearance" in only two paragraphs of the complaint and asserts that not a single allegation of wrongdoing is made against him.  Thus, he submits that the complaint fails to state a claim upon which relief can be granted against him.  It appears, however, that the Relators assert that Dr. Kawalek, as Medical Director for the Centers, had the responsibility to oversee the day-to-day operations at the Centers' various locations, which place him at the center of the alleged fraudulent scheme.  Moreover, it is alleged that the defendants – which would include Dr. Kawalek - exaggerated medical problems of patients and contrived medical diagnoses to justify unnecessary medical tests and caused false and fraudulent Medicare and Medicaid claims to be allowed and paid.  As the Court of Appeals for the Third Circuit has recognized, a complaint will withstand a Rule 12(b)(6) attack if the material facts as alleged, in addition to inferences drawn

from those allegations, provide a basis for recovery.  <u>Menkowitz v. Pottstown Memorial Medical Center</u>, 154 F.3d 113, 124-25 (3d Cir. 1998).  Viewed in the light of the foregoing liberal pleading standards, this court simply cannot say at this early stage of the proceedings that Dr. Kawalek's alleged role in the matter complained of is but a "cameo appearance" and/or that Relators will be able to state no set of facts in support of their claims.

   *Rule 9(b) Motion*

   Federal Rule of Civil Procedure 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."  Fed.R.Civ.P. 9(b).  The purpose of the rule is "to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior."  <u>Seville Industrial Machinery Corp. v. Southmost Machinery Corp.</u>, 742 F.2d 786, 791 (3d Cir. 1984), <u>cert. denied</u>, 469 U.S. 1211 (1985).

   The Rule 9(b) argument made by Dr. Erzurum and incorporated by Dr. Kawalek is that the Relators have failed to provide specific facts concerning the alleged fraud.  The

6

defendants argue that the Relators' complaint, including what Dr. Kawalek characterizes as a "summarization" of nine categories of fraudulent conduct set forth in paragraph 37 of the complaint, is insufficient to satisfy the requirements of Rule 9(b).  The defendants suggest that the Relators must plead the date, place and time of the purported fraud.  Reference is made to the cases of <u>United States ex rel. Clausen v. Lab. Corp. of Am. ("LabCorp")</u>, 290 F.3d 1301 (11th Cir. 2002) and <u>United States ex rel. Quinn v. Omnicare, Inc.</u>, 382 F.3d 432 (3d Cir. 2004).

The relator in <u>Clausen</u> alleged in his FCA complaint that LabCorp engaged in six schemes in a complex, decade-long effort to defraud the government by, *inter alia*, performing unauthorized, unnecessary or excessive medical tests on residents of long-tern care facilities who participated in government-funded health insurance programs and submitted bills for this work to the government.  On defendant's motion to dismiss, the Eleventh Circuit applied Rule 9(b) to the relator's amended complaint and found it to be deficient since it did not identify any specific claims that were submitted to the United States or identify the dates on which those claims were presented.  290 F.3d at 1311-12.  As well, the Circuit court noted, "Clausen merely offers conclusory statements, and does not adequately allege when-or even if-the schemes were brought to fruition. ...

No amounts of charges were identified. No actual dates were alleged. ... No copy of a single bill or payment was provided." 290 F.3d at 1312.

The Third Circuit Court of Appeals has rejected such strict application of Rule 9(b). In Seville, a Rule 9(b) challenge was based upon the failure to plead the "date, place and time" of an alleged RICO fraud. The Third Circuit found that the district court's scrutiny of the fraud allegations was too strict, stating:

> Rule 9(b) requires plaintiffs to plead with particularity the "circumstances" of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against various charges of immoral and fraudulent behavior. It is certainly true that allegations of "date, place or time" fulfill these functions, but nothing in [Rule 9(b)] requires them.

742 F.2d at 791. The Third Circuit has admonished district courts applying Rule 9(b) that "focusing exclusively on its 'particularity' language 'is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules." Christidis v. First Pennsylvania Mortgage Trust, 717 F.2d 96, 100 (3d Cir. 1983)(quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1298, at 407 (1969)). Within the Third Circuit, "[p]laintiffs are free to use

8

alternative means of injecting precision and some measure of substantiation into their allegations of fraud. <u>Seville</u>, 742 F.2d at 791.

Any reliance on the <u>Omnicare</u> case is misplaced since it did not involve a motion to dismiss but, rather, review of a summary judgment decision where the failure to establish an element essential to the case, i.e., the actual submission of a claim to the government for payment, meant there was no issue of material fact to be decided.  Proof of an actual submission of a false claim was required at the summary judgment stage of the litigation in order for the case to proceed to trial.

We do not read <u>Omnicare</u> to require such proof at the motion to dismiss stage of litigation, however.  Indeed, it is clear that the relator's complaint in <u>Omnicare</u> passed muster under Rule 9(b) and he was accorded the opportunity to discover the particulars of the individual claim submissions.  382 F.3d at 439 n.10.  We conclude, as have others, that the majority in <u>Clausen</u> was seeking not "particularity" but proof by requiring the relator to affix actual claims for payment to the complaint, which, in our view, is inappropriate on a Rule 9(b) motion to dismiss.  <u>Clausen</u>, 290 F.3d at 1317 (Barkett, J., dissenting); <u>see also</u>, <u>United States of America ex rel. Pogue v. Diabetes Treatment Centers of America</u>, 238 F.Supp.2d 258, 268-69 (D.C.D.C.

2002). As well, application of <u>Clausen's</u> requirement for proof would, at this stage in the proceedings, run counter to the generous approach to pleadings taken by the Third Circuit. <u>See, e.g.</u>, <u>Christidis</u>, 717 F.2d at 99-100; <u>United States of America ex rel. Atkinson v. Pennsylvania Shipbuilding Company</u>, 2000 WL 1207162, *8 (E.D.Pa. 2000).

"Rule 9(b) was not intended to require a plaintiff to know every detail before he or she could plead fraud." <u>United States of America v. Kensington Hospital</u>, 760 F.Supp. 1120, 1125 (E.D.Pa. 1991). Particularly in the context of federal FCA cases, the courts have recognized the impracticality of requiring the plaintiff to plead the facts of each individual claim, particularly where the claims are numerous and extend over the course of several years. <u>Id.</u>, <u>see also</u>, <u>Pogue</u>, 238 F.Supp.2d at 268; <u>United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.</u>, 20 F.Supp. 2d 1017, 1049 (S.D.Tex. 1998)("The basic framework, procedures, the nature of fraudulent scheme, and the financial arrangements and inducements among the parties and physicians that give rise to Relator's belief that fraud has occurred have been alleged with specificity; Plaintiffs are entitled to discovery before being required to list every false claim, its dates, the individuals responsible, and why each patient was not eligible for Medicare.").

In this case, the Relators have sufficiently identified the scheme of fraudulent behavior in which the defendants allegedly engaged, that is, billing the federal government for unnecessary tests and procedures and misrepresenting patients' medical conditions to justify the billing codes used.  As well, the Relators have set forth a time period for the alleged fraud, that is, from at least 2001 through "the present."[9]  Consistent with the requirements of Rule 9(b) and with Rule 8's requirement of a short, plaint statement of entitlement to relief, the complaint in this case provides the defendants, including Dr. Kawalek, with adequate notice of the charges against them, sufficient to prepare a defense.  "[F]ull particulars will have to be revealed during discovery."  <u>United States of America v. Kensington Hospital</u>, 760 F.Supp. 2d 1125.

*Motion to Stay*

In the alternative to his motion to dismiss, Dr. Kawalek moves the court to stay this case pending a decision from the United States Bankruptcy Court.  Dr. Kawalek argues that the instant *qui tam* action and the adversary proceeding in the bankruptcy court, which involves only Dr. Erzurum, are somehow duplicative actions, that the adversary proceeding came "first"

---

[9]   The Relators filed the complaint on August 25, 2003.

and that this action, coming as the "second" case, must be stayed. This argument lacks any support.

The instant *qui tam* action and the adversary proceeding are not "duplicative" actions or lawsuits. The *qui tam* case was filed against multiple defendants to recover damages resulting from alleged false and fraudulent billings submitted to the United States government. The action seeks remedies expressly provided by 31 U.S.C. §§ 3729-3732. In contrast, the adversary proceeding in Dr. Erzurum's bankruptcy was filed only against him and addresses solely whether any *qui tam* liability otherwise attributable to Dr. Erzurum is dischargeable in his bankruptcy pursuant to 11 U.S.C. § 523(a)(2), (a)(4), and (a)(6). Thus, as the Relators note, "although the two lawsuits arise from a common factual background, the two actions are not against the same defendant, they do not assert the same cause of action, they do not seek the same relief, they do not subject any one party to concurrent or duplicative litigation, and they do not require a party to present the same defenses and arguments in two separate proceedings." Doc. 39, p. 13 (internal quotation and citation omitted).

As well, the adversary action could not properly be considered the first-filed action since it appears that the *qui tam* action was filed before Dr. Erzurum filed for bankruptcy and,

*a fortiori*, before the Relators filed the adversary case in Dr. Erzurum's bankruptcy.

For the above-stated reasons, the district court should deny the Motion to Dismiss or, in the alternative, Motion for Stay (doc. 30).

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report.  Any party opposing the objections shall have seven (7) days from the date of service of the objections to respond thereto.  Failure to timely file objections may constitute a waiver of any appellate rights.

                                             Respectfully submitted,

                                             /s/ Amy Reynolds Hay
                                             AMY REYNOLDS HAY
                                             United States Magistrate Judge

Dated:   17 April, 2006.

cc:  Hon. David S. Cercone
     United States District Judge

     Andrew M. Stone, Esquire
     Stone & Stone
     828 Frick Building
     437 Grant Street
     Pittsburgh, PA 15219

     Robert L. Eberhardt
     Assistant United States Attorney
     U.S. Attorney's Office
     U.S. Post Office and Courthouse

```
700 Grant Street
Suite 400
Pittsburgh, PA 15219

Donald R. Calaiaro, Esquire
Calaiaro, Corbett & Brungo
330 Grant Street
Suite 1105
Pittsburgh, PA 15219-2202

Robert O. Lampl, Esquire
960 Penn Avenue
Suite 1200
Pittsburgh, PA 15222
```